UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

SCOTT WILLIAM THOMPSON,

                    Petitioner,

v.                                              Civil No. 4:16cv98
                                                Criminal No. 4:06cr31

UNITED STATES OF AMERICA,

                    Respondent.


## OPINION AND ORDER

This matter is before the Court on Scott William Thompson's ("Petitioner") second Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed with the assistance of counsel. ECF No. 68. The merits of Petitioner's § 2255 motion turn on whether Petitioner was properly sentenced to a mandatory term of life imprisonment based on the finding that he has two prior "serious violent felonies." 18 U.S.C. § 3559(c)(1)(A). For the reasons explained below, the Court **GRANTS** Petitioner's § 2255 motion, vacates his life sentence, and **ORDERS** that a new sentencing hearing be scheduled in this case.

### I. Factual and Procedural Background

On February 13, 2007, Petitioner pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). On October 10, 2007, Petitioner was sentenced to a term of life imprisonment based on the sentencing judge's finding that the offense of conviction was

Petitioner's third "serious violent felony" under the federal "three strikes" law. Petitioner's first two strikes consisted of one prior § 2113 federal bank robbery conviction and one state-law robbery conviction under California Penal Code § 211. Petitioner's mandatory life sentence was affirmed on appeal, United States v. Thompson, 554 F.3d 450, 451 (4th Cir. 2009), and his petition for writ of certiorari was denied by the Supreme Court, Thompson v. United States, 558 U.S. 870 (2009). In 2010, Petitioner filed his first § 2255 motion, which was denied by the sentencing judge, and the Fourth Circuit thereafter denied Petitioner's application for a certificate of appealability. United States v. Thompson, 454 F. App'x 223 (4th Cir. 2011).

Several years later, Petitioner obtained authorization from the Fourth Circuit to file a second § 2255 motion. ECF No. 67. After the second habeas proceeding was assigned to the undersigned judge, this Court took Petitioner's second § 2255 motion under advisement for an extended period of time "in light of the rapidly evolving legal landscape" relevant to Petitioner's procedural and merits arguments. ECF No. 88, at 2. On September 30, 2019, this Court entered an Order granting the Government's motion to dismiss the second § 2255 motion on the procedural ground that Petitioner failed to satisfy the gatekeeping requirements set forth in 28 U.S.C. § 2255(h)(2). Id. at 11. The Court, however, found that reasonable minds could differ on this procedural finding, and

2

therefore granted a certificate of appealability, further noting that Petitioner may ultimately have a meritorious habeas claim should he overcome the necessary procedural hurdles.  Id. at 12.

On April 21, 2021, the Fourth Circuit entered an Order granting an unopposed motion to remand the case to allow Petitioner to "renew and update his arguments that his 1988 California robbery conviction does not qualify as a predicate offense under 18 U.S.C. § 3559(c)([2])(F)(i), the government to respond to those arguments, and the district court to rule on the merits of appellant's motion to vacate in the first instance."  ECF No. 97, at 1 (emphasis added).[1]  Following the issuance of the Fourth Circuit's mandate in June of 2021, this Court issued a briefing order, ECF No. 100, and later granted two consent motions seeking briefing extensions, ECF Nos. 103, 106, 109.  The Court has now received all supplemental briefs and a notice of supplemental authority.  ECF Nos. 104, 107, 110, 111.  As outlined in the parties' filings, the sole issue before this Court is whether Petitioner's California robbery conviction "qualifies as 'robbery' under the enumerated-offenses clause appearing in

---

[1] On appeal, the Government informed the Fourth Circuit that it was withdrawing/waiving its procedural challenge to Petitioner's motion and was prepared to defend the case solely on the merits.  ECF No. 107, at 5.  On remand, the Government further conceded that Petitioner only needed to prevail on a single merits-based issue.  Id. at 7.  This Court commends the Government for its position seeking a merits-based ruling in this case.  The Court further notes that both parties have filed detailed and well-argued briefs effectively advocating for their respective positions.

§ 3559(c)(2)(F)(i)."[2]   ECF No. 107, at 7.   If it does, as argued

by the Government, Petitioner's § 2255 motion fails on the merits;

if it does not, Petitioner does not qualify for a mandatory life

sentence under the federal three strikes law and is entitled to a

new sentencing hearing.   As indicated above, this merits question

is resolved in Petitioner's favor.

## II. Legal Standard

As outlined by the Fourth Circuit in its opinion affirming

Petitioner's life sentence on direct appeal:

---

[2] This Court has jurisdiction over the remanded habeas proceeding based on the Fourth Circuit's ruling authorizing Petitioner to file a second or successive motion.  See Pratt v. United States, 129 F.3d 54, 57 (1st Cir. 1997) ("AEDPA's prior approval provision allocates subject-matter jurisdiction to the court of appeals by stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward.") (emphasis added). Additionally, the Fourth Circuit's remand order expressly authorizes this Court to rule on the merits of the second petition, ECF No. 97, at 1, an instruction that stems from the Government's express waiver of all procedural defenses.  This Court interprets such case-specific remand order as confirming that this Court has jurisdiction to consider the merits.  See Gonzalez v. Thaler, 565 U.S. 134, 143 (2012) (distinguishing between the jurisdictional requirement that a Certificate of Appealability ("COA") must be issued before a federal habeas appeal can be heard and the non-jurisdictional statutory requirements that determine whether a COA should be issued); Williams v. United States, 927 F.3d 427, 437-39 (6th Cir. 2019) (extending the analysis in Gonzalez to conclude that the "substantive requirements" in § 2255(h)(1) are not jurisdictional following appellate authorization to file a successive § 2255 motion); but see United States v. Peppers, 899 F.3d 211, 221 n.3 (3d Cir. 2018) (finding that the "gatekeeping requirements" of § 2255(h) are jurisdictional).  Importantly, the successive § 2255 appellate approval process "screens out issues unworthy of judicial time and attention and ensures that frivolous claims are not assigned" to district courts for merits consideration, and once the Fourth Circuit determines that a successive petition "is warranted and resources are deployed in briefing and argument," the threshold jurisdictional authorization "has fulfilled that gatekeeping function." Gonzalez, 565 U.S. at 145.  Although this Court generally has an obligation under § 2255(h) and § 2244(b)(4) to revisit the Fourth Circuit's threshold procedural findings on successive § 2255 petitions, the Government's concessions are sufficient to resolve the matter in this case.

> The "three strikes" law requires the district court to impose a mandatory life sentence upon the conviction of a 'serious violent felony' if the defendant has either two prior convictions for serious violent felonies or at least one conviction for a serious violent felony and at least one conviction for a serious drug offense.

United States v. Thompson, 554 F.3d 450, 451-52 (4th Cir. 2009). "Whether a prior conviction is a 'serious violent felony' – a strike for three-strikes purposes – is decided by the district court at sentencing."   In re Moore, 955 F.3d 384, 386 (4th Cir. 2020).   Based on the statutory text, a felony can qualify as a "serious violent felony" under any one of three distinct provisions in the three strikes law: (1) the lengthy list of "enumerated" federal offenses, which includes robbery; (2) the "force clause" applicable to violent felonies with a maximum term of imprisonment of 10 years or more; or (3) the "residual clause" applicable to violent felonies with a maximum term of 10 years or more.   18 U.S.C. § 3559(c)(2)(F).

Here, only the first statutory provision is relevant based on the Government's concessions, and such provision provides that a "strike" applies when a defendant is convicted of "a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118 [of Title 18]) . . . ."   18 U.S.C. § 3559(c)(2)(F)(i). The first listed exemplar federal robbery crime is robbery committed within the special maritime and territorial jurisdiction

of the United States, 18 U.S.C. § 2111, the second is bank robbery, 18 U.S.C. § 2113, and the third is robbery of controlled substances, 18 U.S.C. § 2118.  As described by the Fourth Circuit, "the essence" of all three exemplar federal robbery crimes "is a taking from another by force and violence, or by intimidation." United States v. Johnson, 915 F.3d 223, 227 (4th Cir. 2019).

Having identified the essence of the three exemplar federal robbery crimes, this Court must determine the essence of California § 211 robbery to determine whether it aligns with the federal exemplar crimes, as is required to qualify as a "strike" for three strikes purposes.  California statutory robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211. This state-law definition of robbery is facially consistent with the federal robbery crimes listed in 18 U.S.C. §§ 2111, 2113, and 2118 as well as the "generic" understanding of robbery as recognized by a majority of states.  The complicating issue, however, is the fact that, unlike the three exemplar federal statutes, the "fear" necessary to accomplish a robbery under § 211 is not limited to "fear" of bodily injury, but rather, extends to fear that property damage will result from the crime.  See Cal. Penal Code § 212 (defining § 211 "fear" as including "[t]he fear of an unlawful injury to the person or property of the person

robbed" or "the fear of an immediate and unlawful <u>injury to the</u> person or <u>property</u> of anyone in the company of the person robbed." (emphasis added)).

### III. Discussion

#### A. Categorical Analysis Applies

It is undisputed that Petitioner's California robbery conviction involved the use of a firearm and a verbal threat to shoot and kill the robbery victim. However, the legal dispute before this Court does not turn on the case-specific facts, but rather, requires a "categorical" analysis detached from the facts to determine whether California § 211 robbery "counts as an enumerated robbery offense" under the federal three strikes law. <u>Johnson</u>, 915 F.3d at 227. Such determination requires a comparison of the elements of California § 211 robbery to the elements of the exemplar federal robbery statutes set forth in 18 U.S.C. § 3559(c) to determine whether the former "applies to conduct outside" the conduct described in the enumerated robbery offenses. <u>Id.</u> at 230.

#### B. Section 3559(c)(2)(F)(i) Should be Interpreted Broadly

The Government argues that California § 211 robbery qualifies as a strike based on the guidance provided by the Fourth Circuit in <u>United States v. Johnson</u>. Like the instant case, <u>Johnson</u> analyzed whether a prior state-law robbery offense qualified as a "strike" under the enumerated robbery provision of the federal three strikes law, framing the controlling inquiry as "boil[ing]

7

down to this: Did Congress intend to include [the relevant state robbery offense] as a serious violent felony in its listing of specific crimes in § 3559(c)?" <u>Johnson</u>, 915 F.3d at 228.  Although the <u>Johnson</u> court answered that question in the affirmative with respect to <u>New York</u> third degree robbery, the issue in <u>Johnson</u> turned on a state-law "presence" requirement, not on whether the robbery could be predicated on property threats.

While the holding in <u>Johnson</u> does not directly resolve the question before this Court, the guidance provided therein both establishes the framework this Court must apply and makes clear that the three strikes law, as applicable to state robbery crimes, should be interpreted broadly.  As explained in <u>Johnson</u>, when Congress was drafting the enumerated crimes provision it "faced no small task in writing the . . . law in a way that would incorporate the contours and nuances of myriad state criminal codes," and "Congress could hardly have been clearer" through its chosen text that "§ 3559(c)'s enumerated clause should be understood broadly" as Congress (1) "listed more than a dozen distinct" crimes and either "directly describe[d] each crime" or described them through cross-reference to another federal statute, and (2) began the enumerated crimes section with broad prefatory language that "calls upon courts to look to the essential nature of a crime, not to minor definitional tweaks or wrinkles in individual jurisdictions."  <u>Id.</u> at 228-29.  Moreover, when considering the

enumerated robbery provision, "§ 3559(c) references other federal robbery offenses using the words 'described in' rather than 'defined in,'" further indicating that a state crime does not need to have elements "identical to" the listed federal crime to qualify as enumerated "robbery." Id. at 229. The Fourth Circuit also instructed district courts to be "especially cautious in carving exceptions to § 3559(c) for the various state robbery offenses," because the statute already includes a "fact-based escape hatch" applicable to robbery crimes so that a defendant can avoid a "strike" if he or she can prove that a robbery offense did not involve a firearm/dangerous weapon (or threat thereof) and did not result in death or serious bodily injury.[3] Id. Of course, district courts are still obligated to ensure that an offense qualifies as a "strike" before shifting the burden to the defendant to satisfy the escape hatch by clear and convincing evidence. Id. at 230.

---

[3] While discussed by the Fourth Circuit solely in the robbery context, the referenced robbery "escape hatch" by its terms extends to the entire "force clause" as well as the entire "residual clause," both of which are set forth in § 3559(c)(2)(F)(ii). See Abraham v. United States, 477 F. Supp. 2d 1232, 1239 (S.D. Fla. 2007). The fact that a defendant may have the opportunity to prove that certain other violent felonies were not factually aggravated through the use or threatened use of a weapon, or through causing serious bodily injury, arguably evinces Congress's intent to have a broad "check" to ensure that the life-altering recidivist "three strikes" penalty set forth in § 3559(c) does not always apply even when there are three categorical "strikes" as not all violent felonies are serious violent felonies. Cf. Borden v. United States, 141 S. Ct. 1817, 1830 (2021) (plurality opinion) (explaining that when interpreting the statutory definition of "violent felony," the term's "ordinary meaning informs [the] construction," as does the "context and purpose" of the statutory scheme).

Applying these principles, the Fourth Circuit's <u>Johnson</u> opinion rejected the defendant's contention that New York third degree robbery is broader than federal robbery because it lacks a "presence" requirement, noting that "at least nineteen states do not include a narrow presence requirement in their definition of robbery," and explaining that it is unlikely that Congress intended to exclude robbery as defined by such a large number of states. <u>Id.</u> at 231-32, n.4 & 5.   While this Court proceeds with the requisite caution when analyzing California § 211 robbery, it does not interpret the Fourth Circuit's direction to read § 3559(c)(2)(F)(i) broadly as an instruction to read such provision as boundless, and concludes that "property-threat" robberies have a different "essential nature" or "essence" than the exemplar federal robberies listed in § 3559(c)(2)(F)(i).

### C. The Distinction Between Injury or Threats to a Person and Injury or Threats to Property

Although § 3559(c)(2)(F)(i)'s broad reach in the robbery context, as established in <u>Johnson</u>, is favorable to the Government, additional Fourth Circuit case law favors Petitioner as it recognizes the material distinction between threats/violence directed at a person, and threats/violence directed at property. See <u>United States v. Green</u>, 996 F.3d 176, 181–82 (4th Cir. 2021). Although the dispositive analysis in this case turns on the comparison of California § 211 robbery to the three exemplar

federal robbery crimes listed in § 3559(c)(2)(F)(i), as both parties acknowledge, case law analyzing "generic" robbery is instructive, as is consideration of Congress's past treatment of the person/property divide when classifying "violent" crimes.

### 1. "Generic" Robbery

A theft, or larceny, generally involves stealing personal property without violence, such as taking a backpack from a park bench without the owner noticing.  In contrast, robbery is an aggravated form of larceny that most typically involves violence against the owner of the property, such as wresting a backpack from the arm of a resisting owner, or alternatively, through pointing a gun at the owner and obtaining the backpack based on the threat of violence.  In both of these robbery examples, force directed at a person, or intimidation through threatened force of physical injury, is used to commit the robbery.

Consistent with such basic concept of robbery, the Fourth Circuit recently defined "generic" robbery as the "misappropriation of property under circumstances involving immediate danger to the person."  Green, 996 F.3d at 181–82 (emphasis in original) (quoting United States v. Gattis, 877 F.3d 150, 156 (4th Cir. 2017)).[4]  In Green, the Fourth Circuit was not

---

[4] As clarified by the Fourth Circuit, "generic" robbery refers to the "'generally accepted contemporary meaning'" of such crime, and "[w]hile the historical meaning of the crime at common law often provides the offense's 'core,' it is the 'contemporary usage of the term' that controls" when "comparing a potential predicate offense to an [undefined] enumerated

interpreting the federal three strikes law, but rather, was defining the contours of the enumerated crime of robbery as listed in the career offender provision of the federal sentencing Guidelines.[5]  Id. at 182-83 (citing U.S.S.G. § 4B1.2(a)(2)). Because the sentencing Guidelines do not define "robbery," either by express definition or through cross-reference to exemplar crimes, the generic definition of robbery controlled the analysis in Green.  In defining the outer bounds of generic robbery, the Fourth Circuit concluded that, to qualify as a "crime of violence" under the career offender provision, the robbery requires "force or threat[s] to persons – not property."  Id. at 182 (emphasis added) (citation omitted).  In reaching this conclusion, the Fourth Circuit favorably quoted the Tenth Circuit for the proposition that "a significant majority of states have determined that robbery requires property to be taken from a person under circumstances involving danger or threat of potential injury to the person." Id. (emphasis in original) (quoting United States v. O'Connor, 874 F.3d 1147, 1155 (10th Cir. 2017)).

The Fourth and Tenth Circuits are not alone in recognizing a material distinction between generic robbery involving violence or

---

crime."  Gattis, 877 F.3d at 156 (quoting Taylor v. United States, 495 U.S. 575, 592, 596 (1990)).

[5] The Guideline career offender provision is itself a "three strikes" punishment provision that calls for a longer sentence for qualifying repeat offenders.  U.S.S.G. § 4B1.1.

threats against a person and statutes criminalizing a species of larceny-type crime where violence or threats can be directed at property, such as federal Hobbs Act robbery.  See United States v. Eason, 953 F.3d 1184, 1190, 1193 (11th Cir. 2020) ("By its terms, the Hobbs Act robbery statute—which can be violated with threats of force to 'person or property,' is broader than" both the Guidelines' force clause and "the generic definition of robbery because . . . it can be violated with threats of force to property." (quoting 18 U.S.C. § 1951(b)(1))); United States v. Camp, 903 F.3d 594, 602 (6th Cir. 2018) ("Because the statute plainly criminalizes the 'misappropriation of property under circumstances' that do not involve 'immediate danger to the person,' we join the Tenth Circuit in holding that Hobbs Act robbery is broader than, and therefore not a categorical match with, generic robbery."); United States v. Edling, 895 F.3d 1153, 1156-57 (9th Cir. 2018) (concluding, in a case favorably cited by the Fourth Circuit in its 2021 Green opinion, that Nevada robbery—which can be committed "by means of force or violence or fear of injury, immediate or future, to his or her person or property"—is not a categorical match to generic robbery as enumerated in the Guideline career offender provision because "[g]eneric robbery requires danger to the person, not merely danger to property"). Consistent with the published opinions in Eason and Camp, among others, the Fourth Circuit held that federal Hobbs Act robbery "is

broader" than the generic definition of robbery <u>because</u> it extends to "the use or threat of force against property as well as persons."  <u>Green</u>, 996 F.3d 182.

### 2. The Established Statutory "Persons vs. Property" Distinction for Federal "Violent" Crimes

Further illustrating the materiality of the phrase "or property" as contained in both the federal Hobbs Act and § 211 of the California Penal Code, Congress has previously codified the same "person vs. property" distinction when defining subsets of violent crimes within the federal criminal code.  In the first more inclusive category of crimes, Congress defines "crime of violence" as any offense "that has as an element the use, attempted use, or threatened use of physical force <u>against the person or property</u> of another."  18 U.S.C. § 16(a) (emphasis added).  In contrast, elsewhere in the federal criminal code, Congress more narrowly defines "violent felony" for the purposes of a recidivist criminal punishment provision known as the Armed Career Criminal Act ("ACCA") as any felony that "has as an element the use, attempted use, or threatened use of physical force <u>against the person</u> of another."  18 U.S.C. § 924(e)(2)(B) (emphasis added).[6] Although the definitions of violent crimes differ across various statutory and/or Guideline provisions, "[t]here is nothing incongruous about holding that Hobbs Act robbery [or a crime with

---

[6] The ACCA is similar, in effect, to a "four strikes" law.

similar elements] is a crime of violence for purposes of" statutory provisions that expressly reach "force against . . . property" crimes but is not for purposes of statutes or sentencing Guidelines that are "limited to force against a person" crimes.  Green, 996 F.3d at 181 (quoting O'Connor, 874 F.3d at 1158).  This is so because Congress and the Sentencing Commission are free to define different punishment provisions to serve different purposes, and Congress's decision regarding whether an aggravated recidivist punishment provision should, or should not, extend to property threat crimes must be heeded by federal courts when applying such statute.  See O'Connor, 874 F.3d at 1154 ("Hobbs Act robbery reaches conduct directed at 'property' because the statute specifically says so.  We cannot ignore the statutory text and construct a narrower statute than the plain language supports.") (citation omitted).  Accordingly, both the Fourth Circuit's analysis of generic robbery in Green and an independent comparison of federal statutes defining violent crimes support the finding that classifying an aggravated larceny-type crime as "robbery" when violence or threats of violence are only directed at property is a material deviation from the essence of the crime of robbery, not a "minor definitional tweak[] or wrinkle[]."  Johnson, 915 F.3d at 229.

### 3. The Exemplar § 3559(c) Robbery Crimes
### Require Force Against a Person

The three exemplar federal robbery statutes listed in § 3559(c)(2)(F)(i) do <u>not</u> expressly indicate that the required violent force or threat of force must be directed at a person. That said, the exemplar federal crimes include no reference, direct or inferential, suggesting that they are broad enough to criminalize threats against property.  The absence of a reference to property crimes, particularly when considering the fact that the essence of generic robbery requires force directed <u>at a person</u>, <u>Green</u>, 996 F.3d at 181-82, does not put the public on notice that any of these federal statutes extend to property threat crimes. Furthermore, this Court is not aware of any federal authority from any circuit interpreting such longstanding federal statutes as extending to property threat robberies.

In addition to the fact that the exemplar statutes do not reference property, and the fact that generic robbery does not extend to property threat crimes, the Fourth Circuit has repeatedly indicated that when a § 2113 bank robbery is committed through "intimidation," the threat, regardless of whether it is spoken or inferred through actions, must be a threat to inflict "bodily harm."  <u>United States v. Woodrup</u>, 86 F. 3d 359, 363 (4th Cir. 1996); <u>see</u> <u>United States v. Ketchum</u>, 550 F.3d 363, 367-68 (4th Cir. 2008) (explaining that demands for money from a bank teller

can be sufficient to establish intimidation because they typically carry the implicit threat that noncompliance may lead to bodily harm to the teller or other bank employees); United States v. Wagstaff, 865 F.2d 626, 629 (4th Cir. 1989) (indicating that to establish intimidation under 18 U.S.C. § 2113(a), the requisite "fear" must be the victim's "reasonable fear of bodily harm based on the acts of the defendant") (emphasis in original); United States v. Griffin, 811 F. App'x 815, 818 (4th Cir. 2020) (same). Although the above cases are limited to interpreting § 2113, the relevant elements of § 2111 and § 2118 both mirror the elements of § 2113, as all three statutes use the otherwise undefined phrase "by force and violence, or by intimidation."  Additionally, it is notable that the Government does not argue that the exemplar federal crimes can be predicated on property threats.[7]  Cf. Borden v. United States, 141 S. Ct. 1817, 1837 (2021) (Kavanaugh, J., dissenting) (labeling several crimes, including robbery, as "prototypical felonies involving physical force against a person").  For these reasons, this Court concludes that, consistent

---

[7] The Government contends that whenever a California § 211 robbery involves a property threat, it will necessarily imply an immediate threat to the victim's person, thus rendering the property threat sufficiently similar to the threat of violence required by the exemplar federal crimes.  ECF No. 107, at 16-19.  After careful consideration, this Court rejects such well-argued position for the reasons explained herein, noting that while the Government effectively demonstrates that some factual scenarios involve a property threat that implies a threat of bodily injury (such as a bomb threat), the Government fails to demonstrate that the elements of § 211 categorically require an implied threat of bodily harm.

with the contemporary understanding of "robbery," one of the essential elements of the federal crimes "described in" sections 2111, 2113, or 2118 is that the offender engage in force or violence, or a direct or implied threat of force or violence, that is directed at <u>a person</u>, not property.

### 4. Comparison of California § 211 Robbery to the Exemplar Federal Robbery Offenses

With that backdrop, the Court reorients its analysis to the precise statutory interpretation question before it, which does not turn on the definition of "generic" robbery, but rather, requires this Court to carefully examine the contours of the predicate offense (California § 211 robbery) to determine whether "the essence"[8] of the three federal robbery statutes listed in § 3559(c)(2)(F)(i) is broad enough to capture such state-law offense. This Court, in line with several district courts that have addressed this issue in the context of the "person versus property" distinction, answers that question in the negative.

### a.

First, when interpreting the person versus property distinction, the Fourth Circuit has expressly recognized that California § 211 robbery and Nevada statutory robbery, both of which extend to property threat robberies, are "functionally

---

[8] The Court does not take up Petitioner's contention that <u>Johnson</u> improperly focuses on "the essence" of the three listed federal robbery offenses rather than their elements, ECF No. 111, at 3–8, as the challenged portions of <u>Johnson</u> still support a ruling in Petitioner's favor.

identical" to the federal Hobbs Act in this regard.  <u>Green</u>, 996 F.3d at 179.  <u>Green</u> further establishes that Hobbs Act robbery "extends to a broader range of conduct" than generic robbery <u>because of</u> this distinction.  <u>Id.</u> at 184.  The holding in <u>Green</u>, however, is not dispositive of the issue before this Court in light of the guidance provided in <u>Johnson</u>, to include the Fourth Circuit's statement in a footnote that the focus in a federal three strikes case should be on the breadth of § 3559(c)(2)(F)(i), not the breadth of "generic" robbery.  <u>Johnson</u>, 915 F.3d at 231 n.4.

Though not dispositive, the recognized parallel between the Hobbs Act and California § 211 robbery articulated in <u>Green</u> supports this Court's adoption of the well-reasoned analysis in district court opinions that have analyzed the breadth of § 3559(c)(2)(F)(i) robbery and concluded that enumerated three-strikes robbery is not broad enough to reach Hobbs Act robbery. <u>See</u> <u>United States v. Milton</u>, No. 5:95cr70074, 2021 WL 1554384, at *2, 13-15 (W.D. Va. Apr. 20, 2021) (holding that Hobbs Act robbery is "categorically broader than the definition of a 'serious violent felony' in 18 U.S.C. § 3559(c)(2)(F)" under either the force clause or the enumerated offense of robbery because, unlike the three exemplar federal crimes, which require violence/threats directed at a person, Hobbs Act robbery may be committed "by actual or threatened force against property alone"); <u>Wainwright v. United States</u>, No. 19-62364-CIV-COHN, 2020 U.S. Dist. LEXIS 63247, at *28

(S.D. Fla. Apr. 6, 2020) (concluding that Hobbs Act robbery, a crime that is "unusual in its inclusion of conduct against property" does not qualify as a "serious violent felony" under the federal three strikes law, and that "[w]hile generic robbery is not the same as common law robbery, and also differs from the robbery offenses enumerated in § 3559(C)(2)(F)(i)," appellate cases interpreting generic robbery "are still informative because they indicate that federal robbery statutes in general do not describe crimes in which force is exerted against property").[9]

---

[9] Though both this Court and the parties recognize that the determinative issue is the breadth of "robbery" as enumerated in § 3559(c), the Government argues that California robbery qualifies as "generic" robbery and that such fact "strongly supports the conclusion that it also qualifies as robbery under § 3559(c)." ECF No. 107, at 21; see also id. at 16-17 (citing Fifth Circuit precedent for the proposition that California robbery qualifies as generic robbery because the required property threats imply danger to the victim's person). However, "[t]he problem with the government's reading" of § 211 is that "it excises the words 'or property' from the [California] statute, 'violat[ing] the well-established rule of statutory construction that [courts] must give effect to every word of a statute when possible.'" Eason, 953 F.3d at 1191 (third alteration in original) (quoting Accardo v. U.S. Att'y Gen., 634 F.3d 1333, 1337 (11th Cir. 2011)). Moreover, the Fourth Circuit's holding in Green undercuts the Government's position because the critical distinction that caused the Fourth Circuit to conclude that Hobbs Act robbery falls outside the "generic" definition of robbery is the same distinction that makes California § 211 robbery "unique" as compared to generic robbery. While the Fifth Circuit's analysis in United States v. Tellez-Martinez, 517 F.3d 813 (5th Cir. 2008) and subsequent cases may have carried more weight in this Circuit prior to Green, the Fourth Circuit's Green opinion labels § 211 robbery as "functionally identical" to Hobbs Act robbery with regard to the person/property distinction, Green, 996 F.3d at 179. Additionally, even in the absence of such label, the fact that California law allows the required violence/threat to be employed during the "asportation" phase of a § 211 robbery (the phase when property is carried away) further undercuts the Government's/Fifth Circuit's suggestion that all California § 211 robberies involve "implied" threats to the person because property alone can be threatened after it is peacefully separated from the owner. See ECF No. 107, at 16-18; ECF No. 110, at 1-2; People v. Gomez, 43 Cal. 4th 249, 259-61, 179 P.3d 917, 924-25 (2008) (discussing case law involving threats to a person made during the asportation phase following a thief's peaceful seizing of property).

**b.**

Second, and arguably most compelling, it is notable from a statutory interpretation standpoint that Hobbs Act robbery, a longstanding federal robbery offense at the time the federal three strikes law was codified, was <u>not</u> listed by Congress as one of the "exemplar" robbery offenses in the three strikes law.  This omission is significant for two reasons: (1) as discussed in detail above, the elements of Hobbs Act robbery expressly reach a larceny-type crime involving property threats, and the three exemplar robbery crimes listed in § 3559(c)(2)(F)(i) require violence or threats directed at a person; and (2) Congress has otherwise demonstrated that the person/property distinction is material with respect to criminal statutes governing violent crimes as Congress defines "crime of violence" in multiple statutory provisions differently from "violent felony" in the ACCA.  Importantly, when Congress "uses the same terminology . . . in the very same field . . . , 'it is reasonable to believe that the terminology bears a consistent meaning.'"  <u>Tanzin v. Tanvir</u>, 141 S. Ct. 486, 490-91 (2020) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 323 (2012)).  Rules of statutory construction suggest that this clear distinction (person versus property) should be considered purposeful and that the Court should give meaning to the word "property" when the statutory text so provides.  <u>See</u> <u>Hedin v. Thompson</u>, 355 F.3d 746, 750 (4th Cir. 2004)

("A court must attempt to interpret a statute so as to give each word meaning and to avoid creating surplusage.").[10]   In light of this established statutory distinction, Congress's decision to list three exemplar federal robbery statutes that all require at least an indirect threat of <u>bodily harm</u>, while omitting the Hobbs Act statute that extends to property-based threats, signals Congress's intent to capture only those robberies involving force/threats directed at a person.   Though it was "no small task" for Congress to draft the three-strikes law in a manner that captured "the contours and nuances of myriad state criminal codes," <u>Johnson</u>, 915 F.3d at 228-29, Congress could have cross-referenced the Hobbs Act in the list of three exemplar federal robbery statutes if it intended to reach state-law aggravated larcenies that extend to property threats.[11]   However, as the aim of the

_____

[10] In further support of the finding that Congress has used "property-threats" as a line of demarcation when defining violent crimes, it is notable that one federal statute includes both subsets of violent crimes within the same title and section.  <u>Compare</u> 18 U.S.C. § 924(c)(3)(A) (reaching violence against persons or property), <u>with</u> 18 U.S.C. § 924(e)(2)(B) (reaching only violence against persons); <u>see also</u> <u>Intel Corp. Inv. Pol'y Comm. v. Sulyma</u>, 140 S. Ct. 768, 777 (2020) (explaining that federal courts "generally presum[e] that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another") (alteration in original) (citation omitted).  Although the intent behind § 924 is not directly at issue, it is notable that the more narrowly drawn definition of "violent" crimes appearing in § 924 is the ACCA provision establishing an <u>elevated mandatory minimum</u> term of imprisonment for recidivist offenders.   Similarly, here, the federal three strikes law: (1) establishes an elevated mandatory term of imprisonment for recidivist offenders; and (2) has its own "force clause" that is limited to force directed at a person (not property).

[11] Though the Hobbs Act extends to both "robbery" and "extortion," 18 U.S.C. § 1951, those terms are separately defined therein, and the statute is divisible into Hobbs Act robbery and Hobbs Act extortion.  <u>United States v.</u>

three strikes law was to capture <u>serious</u> violent felonies, and the generic understanding is that an aggravated larceny is not even "robbery" unless violence against a person is employed or threatened, it is unsurprising that Congress omitted such a reference.

c.

Third, the crime of extortion, as it is defined in the federal three strikes law, further supports the finding that an aggravated larceny-type crime categorized as robbery or extortion only warrants a "strike" if it requires violence or a threat of violence directed at <u>a person</u>.   <u>See</u> 18 U.S.C. § 3559(c)(2)(C) (defining extortion as "an offense that has as its elements the extraction of anything of value from another person by threatening or placing that person in fear of injury <u>to any person</u> or kidnapping of <u>any person</u>") (emphasis added).  By way of background, appellate case law interpreting the scope of generic robbery often crosses over into the analysis of the scope of the related crime of generic extortion, as litigants frequently argue that even if the contested larceny-type crime does not constitute robbery, it still qualifies as extortion.   <u>See, e.g.</u>, <u>Green</u>, 996 F.3d at 181-82 (addressing the government's argument that "Hobbs Act robbery is a categorical

---

<u>Mathis</u>, 932 F.3d 242, 265 n.23 (4th Cir. 2019).  Accordingly, Congress could have listed Hobbs Act robbery as an exemplar robbery crime, just as it listed the robbery codified in § 2118, a statute that criminalizes <u>both</u> "Robberies and burglaries involving controlled substances."  18 U.S.C. § 2118.

23

match" for both generic robbery and generic extortion).  Extortion is similar in nature to the crime of robbery, though it reaches conduct that does not rise to the level of robbery and is typically a less violent crime than robbery that can be predicated on property threats.  United States v. Becerril-Lopez, 541 F.3d 881, 891-92 (9th Cir. 2008).  Important to the instant analysis, in Becerril-Lopez, the Ninth Circuit concluded that California § 211 robbery did not constitute generic robbery under the federal Guidelines' career offender definition but did constitute generic extortion under the then-in-place career offender Guideline.  Id. Ten years later, in United States v. Bankston, 901 F.3d 1100 (9th Cir. 2018), and United States v. Edling, 895 F.3d 1153 (9th Cir. 2018), the same appellate Court concluded that California § 211 robbery, as well as Nevada statutory robbery, do not qualify as generic extortion under the Guideline career offender provision because "the Sentencing Commission amended the enumerated offenses clause [in 2016] by adding for the first time a definition of 'extortion'" and such definition is properly interpreted as "narrow[ing] the offense by requiring that the wrongful use of force, fear, or threats be directed against the person of another, not property."  Edling, 895 F.3d at 1157 (emphasis added); see Green, 996 F.3d at 183 (similarly concluding that the Guidelines' updated definition of extortion does not reach crimes involving "injury or threatened injury to property").  Although the question

before this Court does not turn on the scope of any "generic" crime, it remains significant that the federal three strikes law, like the post-2016 Guidelines, only reaches extortion that involves violence/threats to persons, not property. The fact that extortion has always been expressly defined in the federal three strikes law to require violence or threats against <u>a person</u> further demonstrates that Congress' intent was to limit "strikes" arising from aggravated theft crimes to offenses involving violence or threats of violence/injury to <u>a person</u>,[12] thus targeting only serious violent felonies. <u>Cf.</u> H.R. Rep. No. 103-463, at 3-4 (1994) (explaining that the federal three strikes bill was "intended to take the Nation's <u>most dangerous</u> recidivist criminals off the streets and imprison them for life").

---

[12] The Court recognizes that the three strikes law includes other enumerated offenses, such as arson, that may not in all instances require violence, or a threat or danger of violence, directed toward another person. However, because robbery and extortion are far more similar in nature, the better synthesis of the various enumerated definitions, particularly when considered in conjunction with the guidance in <u>Green</u>, is to draw from the statutory definition of extortion when considering which aggravated larceny-type crimes Congress intended to qualify as a "strike." <u>See</u> 3 Wayne R. LaFave, Substantive Criminal Law § 20.4(a), (b) (3d ed. & Dec. 2021 Update) (explaining that robbery and extortion are "closely related" and that statutory extortion "fill[ed] a vacuum" left by the fact that robbery was typically limited to "a threat of immediate bodily harm" or a "threat to destroy a victim's home" but not other property); <u>cf.</u> <u>People v. Torres</u>, 33 Cal. App. 4th 37, 50, 39 Cal. Rptr. 2d 103, 110 (1995) (discussing the similarities between robbery and extortion and explaining that "[b]oth crimes have their roots in the common law crime of larceny" and that both "share the element of an acquisition by means of force or fear"). When considering robbery and extortion together, it appears that Congress saw a need to clarify that the generally less violent form of aggravated property theft (extortion) required a clear definition requiring a threat against <u>a person</u>, whereas with robbery, the threat against a person is evident from the elements of the listed federal robbery crimes, and thus, did not need to be specified.

**d.**

Fourth, multiple federal courts have persuasively explained why Hobbs Act robbery, or state robbery offenses that can be committed by threating property, do not qualify as a strike under § 3559(c)(2)(F)(i).  These include <u>Milton</u> and <u>Wainwright</u>, cited above.  Similarly, yet even more squarely on point, in <u>United States v. Minjarez</u>, 374 F. Supp. 3d 977 (E.D. Cal. 2019), the district court concluded that California § 211 robbery does not qualify as a "strike" under the enumerated crimes provision of the federal three strikes law because "it punishes conduct that is outside the reach of §§ 2111, 2113 or 2118" as "threatening to harm one's property would not put an ordinary, reasonable person in fear of bodily harm."  <u>Id.</u> at 989.  Before reaching this conclusion, the court explained, with great effect, that "the Court's task is not to compare CPC § 211 with the 'generic robbery' and 'generic extortion' definitions in the Guidelines, but must instead compare CPC § 211 with the definitions of 'robbery' and 'extortion' set forth in § 3559(c)."  <u>Id.</u> at 988.  The district court went on to determine that "CPC § 211 is broader than any of the federal robbery statutes because it reaches "mere threats to property, such as 'Give me $10 or I'll key your car' or 'Open the cash register or I'll tag your windows.'"  <u>Id.</u> at 989 (quoting <u>Becerril-Lopez</u>, 541 F.3d at 891).  This conclusion was bolstered by the fact that California's model jury instructions expressly

define § 211 "fear" as including fear of injury to property.  Id.
Subsequent to Minjarez, a second district court in California
reached the same conclusion.  See Morrison v. United States, No.
16-CV-1517 DMS, 2019 WL 2472520, at *7 (S.D. Cal. June 12, 2019)
("Because § 211 punishes conduct that is outside the reach of §§
2111, 2113 and 2118, it is not a categorical match under the
enumerated offense clause in the three-strikes law.").

The analysis regarding the scope of California § 211 robbery
in these latter two cases is supported by the clear definition of
"fear" as codified in § 212 of the California Penal Code.  To the
extent the Government challenges the weight to be given to § 212,
a review of the California model jury instructions settles the
matter.  See Judicial Council of California Criminal Jury
Instructions § 1600 (2021 ed.), https://www.courts.ca.gov/
partners/documents/calcrim-2021.pdf (defining the "fear" element
for the purpose of § 211 robbery as including "fear of . . . injury
to the person's family or property") (emphasis added); see also
People v. Montalvo, 36 Cal. App. 5th 597, 612, 248 Cal. Rptr. 3d
708, 720 (2019) (explaining that § 211 robbery committed through
"fear" included fear that the victim "or [his spouse] or their
property would be injured") (emphasis added).  Because the
California statute, the interpretation of which is informed by the
California model jury instructions, so clearly extends § 211
robbery to larceny-type crimes involving threats to property, "it

is not incumbent on [Petitioner] to identify a [§ 211] robbery prosecution involving only a threat of force against property" in order to secure a favorable categorical ruling regarding the reach of the statute in question. Green, 996 F.3d at 180.[13] Rather, "we know that . . . [§ 211] robbery 'reaches conduct directed at "property" because the statute specifically says so.'" Green, 996 F.3d at 180 (quoting O'Connor, 874 F.3d at 1154); see Gordon v. Barr, 965 F.3d 252, 259-60 & n.7 (4th Cir. 2020) (explaining that the "categorial analysis is complete" when a state, "through plain statutory language, has defined the reach of a state statute" to punish a materially "broader range of circumstances" than the federal offense being analyzed).

_____

[13] This Court considers, and rejects the Government's contention that the Court should deviate from the Fourth Circuit's approach to statutory construction articulated in Green. ECF No. 107, at 22-25. First, contrary to the Government's suggestion, this Court is properly considering the interplay of § 211 and § 212 of the California Code, with such reading confirmed by the California model jury instructions. Second, as supported by the California model jury instructions, even if, as argued by the Government, the Ninth Circuit's "car-keying" property threat example is better characterized as "extortion" rather than robbery, other similar larcenies aggravated by property threats would align with the statutory elements of California § 211 robbery. Third, accepting the Government's legal contention that this Court is bound by state law interpreting its own statutes (which should, of course, include jury instructions adopted by the state judicial council), the Government does not rely on a California case that squarely addresses the contours of § 211 property threat crimes; instead, the Government's best cases originate from Arizona and the Fifth Circuit. Fourth and finally, the Court does not place undue emphasis on the Fourth Circuit's citation to out-of-circuit precedent nor does it read § 3559(c) narrowly; rather, the Court draws from the holding in Green, which is consistent with multiple other circuits, and finds that, by extension, "property threat" robbery is materially distinct from the exemplar robbery crimes listed in § 3559(c)(2)(F)(i).

Notwithstanding the clarity of the California model jury instructions, to the extent it is appropriate to further probe the contours of the California robbery statute based on the Government's assertion that all § 211 property threat robberies will involve an inherent threat to the victim's person, this Court notes its disagreement with the Government's thesis. The California Supreme Court has determined that a § 211 conviction is valid even if the force/threat occurs during the "asportation" phase of a robbery—that is, a larceny can become a robbery even if "the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot." People v. Gomez, 43 Cal. 4th 249, 257, 179 P.3d 917, 922 (2008). With such state-law rule in place, it is not difficult to envision a larceny-type crime that is aggravated by a property threat such that it falls within the elements of § 211, but does not involve an implied threat to harm any person. In Gomez, the California Supreme Court explained that when a thief pulls a knife or a gun on a store owner or store security guard after such individual follows the thief outside, the threat to inflict bodily harm still elevates the larceny into a § 211 robbery because the timing of the threat during the "asportation phase" does not change the nature of the offense. Id. at 256-61, 179 P.3d at 128-32. Similarly, a thief that peacefully "snatches" a valuable antique vase from the owner's vicinity and who subsequently threatens to

smash the vase in order to stop the owner's pursuit would satisfy the statutory elements of a "threat to property" robbery under § 211. See Cal. Crim. Jury Instr. § 1600 (defining the elements of § 211 robbery as requiring that fear, which includes fear of injury to property, be used to take the property or be used "to prevent the person from resisting"). The threat to smash the vase, however, is far afield from a threat to physically harm another person and does not, even by implication, suggest that the owner was threatened with, or was in danger of suffering, physical injury during the robbery.

**e.**

Fifth and finally, the Court alternatively finds that the rule of lenity supports this Court's conclusion because, at a minimum, the definition of robbery in § 3559(c)(2)(F)(i) creates an ambiguity that has two plausible interpretations when applied in the context of state-law "property threat" robbery crimes.[14] The first interpretation, as laid out in detail above, supports the finding that California § 211 robbery materially differs from the three exemplar federal robbery crimes outlined in § 3559(c).

---

[14] To be clear, the rule of lenity is "not a primary tool of construction" and this Court does not find that it is applicable in this case. Hosh v. Lucero, 680 F.3d 375, 383 (4th Cir. 2012) (citation omitted). Rather, this Court alternatively finds that should this Court's statutory analysis be flawed, application of the rule of lenity would be appropriate and would lead to the same result. See id. (explaining that the rule of lenity is "a last resort" that requires a "grievous ambiguity or uncertainty in the statute") (emphasis in original) (citation omitted).

The second interpretation, as arguably alluded to in Johnson, would hold that although § 3559(c)(2)(F)(i) offers no suggestion that it extends to capture property threat robberies, the existence of the "fact-based escape hatch" applicable to enumerated robbery was intended as the only basis to avoid a "strike" for any state law crime that even bears a resemblance to the exemplar federal robberies.  In this Court's view, the latter interpretation is inconsistent with the Court's obligation at the threshold stage to identify elemental differences that render a disputed state-law crime materially broader than the exemplar federal crimes; however, assuming that such a reading is reasonable, it would result in a grievous ambiguity in the statute, and the rule of lenity would dictate that the less harsh alternative of the two "plausibly valid" readings be adopted.  United States v. Hilton, 701 F.3d 959, 968-69 (4th Cir. 2012).[15]

#### f.

For all of these reasons, this Court adopts the analysis in Minjarez and Morrison, as informed by the similar "property-threat" Hobbs Act analysis in Green, Milton and Wainwright.  While the Government correctly highlights the fact that the California Supreme Court has indicated that § 211 "incorporates common law

---

[15] At the risk of stating the obvious, outside the capital-case context, the need to apply the rule of lenity to an ambiguous statute is of the greatest importance when the outcome of the statutory analysis will dictate whether a defendant is subject to mandatory life in prison.

robbery requirements," the observation that common law requirements are "incorporated" into a statute does not resolve the question of whether additional statutory components extend its coverage beyond the "common law" species of robbery. Furthermore, "common law" and "generic" concepts of robbery are merely instructive in this case, and distilling the Court's dispositive finding to its simplest form, it was Congress' election <u>not</u> to list federal Hobbs Act robbery as an "exemplar" robbery crime in § 3559(c)(2)(F)(i) that ultimately drives the result in this case. This Court must honor such election when analyzing California § 211 robbery as, like Hobbs Act robbery, it is "unique" because its terms expressly provide that it can be committed through property threats. <u>Cf.</u> <u>Green</u>, 996 F.3d at 181 (noting, as part of a "force clause" analysis of the Hobbs Act, that the person versus property distinction "makes all the difference"). Consistent with a growing body of case law finding that Hobbs Act robbery is broader than generic robbery <u>because</u> it can be predicated on violence/threats directed at property, California § 211 robbery does not constitute a "strike" under the federal three strikes law because it too can be predicated on threats to property, to include threats occurring during the asportation phase. Therefore, even after proceeding with the caution dictated by <u>Johnson</u>, this Court finds that California § 211 robbery is fundamentally broader than the exemplar robbery offenses listed in § 3559(c)(2)(F)(i) and that the

person/property threat distinction is far more than a mere
"definitional tweak." Based on such finding, Petitioner only has
two "strikes," and he therefore does not qualify for a mandatory
life sentence.[16]

### IV. Conclusion.

For the reasons set forth in detail above, Petitioner's § 2255
motion is **GRANTED**, his life sentence is vacated, and Petitioner is
entitled to a de novo sentencing hearing. ECF No. 68. The new
sentencing hearing should be scheduled as soon as practicable in
light of the fact that, absent the three strikes enhancement, the
statutory maximum for Petitioner's crime is twenty years, and
Petitioner may be eligible for a sentence of time served. The
Court acknowledges that prisoner movement may be delayed due to
the current state of the COVID-19 pandemic, and even if it were
not, some scheduling delay is to be expected as an updated
Presentence Investigation Report ("PSR") must be prepared, and
counsel must be provided sufficient time to file updated position
papers in response to the newly prepared PSR. Counsel are
therefore encouraged to confer with each other, and with the
Probation Office of this Court, to determine whether an appropriate
schedule can be agreed to without court involvement. Counsel
should contact the undersigned judge's calendar clerk after

---

[16] This Court does not have reason to address Petitioner's alternative
challenge predicated on the mens rea necessary to commit California § 211
robbery, having found in Petitioner's favor as to his primary challenge.

conferring with each other and with the Probation Office in order to schedule a new sentencing date.

To avoid any confusion, the Court notes that the above reference to a "time served" sentence should <u>not</u> be interpreted as an indication that such a sentence will be imposed in this case. Notably, the fact that Petitioner has a "categorical" defense to the applicability of the statutory recidivist punishment (and likely has a similar argument with respect to his qualification as a Guideline "career offender") does not change the fact that Petitioner actually threatened violence against a person, not property, during the commission of his California § 211 robbery, and in fact <u>threatened to kill</u> the victim at gunpoint. Such crime was committed prior to Petitioner committing two serious violent felonies for which he was prosecuted in federal court, and the timing of his repeated crimes raises concerns regarding the risk that he may still pose to the public, even if his advisory Guidelines, due to a "categorical" finding, recommend a punishment less than the period of time Petitioner has already served. Determining the appropriate sentence, after considering <u>all</u> relevant sentencing factors, is a matter properly deferred until the resentencing hearing, and the Court does not prejudge the matter here today.

The Clerk is **DIRECTED** to send a copy of this Order to the United States Attorney's Office in Norfolk, Virginia, to counsel

for Petitioner, to the Probation Office of this Court, to the U.S.

Marshals Service, and to the U.S. Bureau of Prisons.  Petitioner

will **remain in custody** pending his resentencing hearing.

    **IT IS SO ORDERED.**


_____ /s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February  11 , 2022